DIANE J. HUMETEWA
United States Attorney
District of Arizona
CARIN C. DURYEE
Assistant U.S. Attorney
405 West Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone:  (520) 620-7300
carin.duryee@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR 07-1207-TUC-RCC (CRP) |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE |
| v. | |
| Howard Wesley Cotterman, | |
| Defendant. | |

Now comes the United States, by and through its undersigned attorneys, Diane J. Humetewa, United States Attorney for the District of Arizona, and Carin C. Duryée, Assistant United States Attorney, and hereby responds to defendant's motion for reconsideration of conditions of release, and opposes release of the defendant, for the reasons set forth in the accompanying memorandum.

1

**MEMORANDUM**

I.      BACKGROUND

     A.  Offense Conduct and Arrest

     At approximately 10:00 a.m. on Friday, April 6, 2007, Howard Wesley COTTERMAN, DOB 11/30/40, a United States citizen and his wife, Maureen Elizabeth Cotterman, arrived at the Lukeville Port of Entry [hereinafter POE] in Arizona in their personal vehicle and applied for admission into the United States from the Republic of Mexico.  Customs and Border Protection Inspectors referred the Cottermans to secondary inspection pursuant to information they received from a Pacific Field Intelligence Unit program called "Operation Angel Watch," which targets convicted and registered sex offenders who travel abroad regularly.

     While at secondary, record checks confirmed that Howard COTTERMAN had been convicted on February 25, 1992, in the Superior Court of California, County of Santa Clara, in case number 150626, after a bench trial, of thirty-three offenses, including the following felonies: two counts of Use of a Minor in Sexual Conduct in violation of California Penal Code Section 311.4©; two counts of Lewd and Lascivious Conduct Upon a Child in violation of California Penal Code Section 288(A); and three counts of Child Molest-Inhabited Dwelling in violation of California Penal Code Section 647.6.  A review of the facts underlying those thirty-three convictions reveals that the defendant went to fourteen daycare/preschool centers over the course of three days (August 15, 19, and 20, 1991) and falsely represented himself to be a doctor with the Department of Social Services investigating physical and sexual abuse of children. Under those pretenses, he gained access to eleven victims, nine girls and two boys, all between

the ages of three and six years old.  He fondled and photographed the vaginas of two six year old females.  Upon those convictions the defendant was sentenced to serve four years in prison on June 19, 1992.  As a result of those convictions, Howard COTTERMAN is a registered sex offender with the state of California.

On April 6, 2007, after being sent to secondary inspection, a search revealed that COTTERMAN and his wife were in possession of two Dell laptop computers, a Pentax Optio digital camera, a SONY video camera, and a Fuji Film E510 camera.  A preliminary search of one of the Dell laptop computers by CBP Officer Alvarado revealed that several files were password protected.  The Immigration and Customs Enforcement [hereinafter ICE] duty agent was notified and responded to investigate further.

When COTTERMAN and his wife were interviewed, they indicated that they had been vacationing for the winter, and had spent approximately 5 months in Mexico.  Before returning to their home in Truckee, California, they were planning on making stops in Tucson, Scottsdale, Sedona, and the Grand Canyon.

Maureen Cotterman indicated that she and her husband have separate laptop computers because hers was mainly for personal use and his was mainly for business.  She further explained that her husband Howard had recently retired from the Center for Systems Management where he was executive director.  Mrs. Cotterman then added that Howard has been leading a clean life since his last conviction.

Howard COTTERMAN stated that his 1992 conviction happened when he got into trouble for taking pictures of two children with their "shirts off" while he was posing as an

3

investigative reporter to investigate children being physically and sexually abused. COTTERMAN stated that he has not been involved with child pornography for the last "17 years" and that there was nothing on the computers or video cameras that the agents needed to know about.

Both COTTERMAN and his wife left the Lukeville POE late in the afternoon on April 6, 2007, with the SONY video camera and Fuji Film E510 camera, which had been reviewed and released to them prior to their departure. Pursuant to well established border search authority, both Dell laptops and the Pentax Optio digital camera were held for forensic examinations. The Cottermans left with the understanding that the remaining materials would be released once the forensic examinations were complete.

Acting Resident Agent in Charge [hereinafter ARAC] Craig Brisbine transported the items from the POE in Lukeville to the ICE office in Tucson and delivered the items to Senior Special Agent [hereinafter SSA]/Computer Forensic Examiner [hereinafter CFE] John Owen at the ICE office in Tucson at approximately 10 p.m. on Friday, April 6, 2007. SSA/CFE Owen checked the items into evidence and began his forensic examination of the items the next day, Saturday, April 7, 2007.

Over the course of the weekend, there was repeated telephonic contact between ICE agents and the Cottermans about the status of the examinations. On Saturday, April 7, 2007, the forensics examination of the Pentax Optio digital camera was complete with negative results. The Cottermans responded to the ICE office in Tucson on the afternoon of April 7, 2007, and Howard COTTERMAN signed the property receipt form and took possession of the Pentax

4

Optio digital camera.   The forensic examinations were still in progress on the Dell laptop computers at that time.

On Sunday, April 8, 2007, the forensic examination of the Dell laptop computer belonging to Howard COTTERMAN, an Inspirion 8600 with Serial Number 5VJ0T61, resulted in the discovery of approximately 75 child pornographic images in unallocated clusters.   There were also numerous password-protected .zip files in folders on that same hard drive.   The laptop belonging to Maureen Cotterman, a Dell Inspirion 8600 with Serial Number D2K0T61, did not contain any contraband.

ICE agents contacted Howard COTTERMAN via his cell phone and requested that he come to the ICE office on Monday, April 9, 2007, at 9:30 a.m. to assist the CFE in completing the forensic examination in order to return his laptop to him.   Agents did not mention the images of child pornography that had been discovered.   Over the phone, Howard COTTERMAN agreed to come to the ICE office Monday morning.

When Monday morning came, only Maureen Cotterman arrived at the ICE office that morning, and she explained that her husband could not make the appointment because he had some business in town.   Though they returned Mrs. Cotterman's laptop to her, ICE agents told her that her husband's laptop would not be returned until access to the protected files was made and their content reviewed.   From all appearances, Maureen Cotterman used the telephone at the ICE office and contacted her husband.

ARAC Brisbine also spoke with Howard COTTERMAN over the phone that Monday morning.   Howard COTTERMAN explained to ARAC Brisbine that he would have to contact

5

some of his business partners to get the passwords because the computer had multiple users and that he would call him back as soon as he had done so.  In response to ARAC Brisbine's invitation to come to the ICE office in Tucson to expedite matters, Howard COTTERMAN responded that Maureen had the car but that he would try to make arrangements for a ride. Afterwards, Maureen Cotterman waited at the ICE office awhile longer, and after Howard COTTERMAN never showed, she eventually departed the ICE office in Tucson at approximately 11:30 a.m.

Unbeknownst to agents at the time, on Monday, April 9, 2007, shortly after ARAC Brisbine spoke with Howard COTTERMAN on his cell phone, COTTERMAN boarded an Aeromexico flight from Tucson to Hermosillo, Mexico, that departed just after noon.  His intended destination was Sydney, Australia via Ciudad Juarez, Vancouver, B.C. and Tokyo. Despite a lookout with Australian immigration, COTTERMAN was able to successfully make entry at Sydney International Airport on the morning of April 12, 2007.

After Howard COTTERMAN fled the country on April 9, 2007, SSA/CFE Owen continued his forensic examination.  On April 11, 2007, SSA/CFE Owen was able to access the twenty-three password protected .zip files on one of the hard drives on COTTERMAN'S computer.  While doing so, SSA/CFE Owen found approximately 378 images and 11 video files of child pornography.  Approximately 360 of the 378 images of child pornography and all 11 videos depicted the same nude or partially nude female, approximately 7 to 10 years old, engaged in various sexual acts.  In a number of the images, an older man, who ultimately was determined to be COTTERMAN, was touching and manipulating the minor female's genitals

and pubic area.  Further analysis revealed the presence of an additional 1206 images of child pornography on the same hard drive, as well as approximately 309 stories of sexual abuse and acts of incest involving minors.

On or about April 13, 2007, a search warrant was executed at COTTERMAN'S residence in Truckee, California.  A number of items, including 415 CDs, 202 3.5" floppy diskettes, zip disks, back-up tapes and a number of computers were seized.  Examination of those items has revealed over 330 images and 18 videos of child pornography that appeared to involve the same victim being abused by COTTERMAN.  On April 25, 2007,  U.S. law enforcement authorities identified and interviewed the minor female victim and her mother.  During the interview, the minor female victim, who was 10 years old at the time, confirmed that Howard COTTERMAN was her grandfather, that she had been on trips with him, that he sexually abused her, and that he had memorialized the abuse in photographs and videos.  The minor female victim's mother confirmed (a) that COTTERMAN was her father-in-law and the victim's grandfather; (b) that her daughter had been on trips with him; and (c) after looking at some of the images containing child pornography found on COTTERMAN'S computer) that her daughter was the minor female victim depicted in the images in question.

On September 8, 2007, Australian law enforcement authorities arrested COTTERMAN pursuant to a U.S. request for his provisional arrest in Coffs Harbour, Australia.  When first approached by Australian authorities, COTTERMAN displayed a California driver's license bearing his photograph and the name "John Raymond Thompson."  He explained that he had lost his passport and that his son "Greg" was making arrangements for a replacement.  However,

soon thereafter he admitted that his true name was HOWARD WESLEY COTTERMAN, and added, "I am the person that you're looking for."

Shortly after his arrest, COTTERMAN told Australian law enforcement authorities that he had been on vacation in Australia and had been camping and to Victoria and Queensland. After being informed of the charges pending against him, he inquired how strong the case was and whether a conviction on those charges would preclude him from returning to Australia for a vacation.  He stated that his wife and son need to get on with their lives and that he had considered turning himself in to face the consequences of his actions. COTTERMAN added that if the Australian Federal Police would not oppose bail, he could provide information on his forged passports and false driving licenses, which would be a "win, win," where the AFP would get potentially useful  information and he would not have to "rot in a cell."  The AFP declined COTTERMAN'S offer.

At the time of his arrest, Australian law enforcement officers also searched COTTERMAN and the hotel room where he had been staying.  Among the items they found were: (1) a U.S. passport bearing the name, "Howard Wesley Cotterman;"(2) four fraudulent California driver's licenses – each bearing Cotterman's photograph and various names and addresses; (3) a Medicare card bearing the name, "Zahraa Hashimi;" (4) an American Express card; (5) a Bank of the West card; (6) a United Visa card; (7) two front pages of a passport bearing Cotterman's photograph and the name, "Harold Lester Porter;"  (8) Australian currency totaling $14,320.00; (9) U.S. currency totaling $3,878.00; (10) two Bank of the West checks; (11) a Toshiba Laptop computer; and (12) a suitcase containing: (a) a Discover card; (b) a

8

California driver's license; and © a 2 gigabyte USB drive used for storing electronic data commonly referred to as a "thumb drive."

On or about October 24, 2007, Australian law enforcement officers searched a self-storage facility that COTTERMAN rented while in Australia.  During the search, the officers found: (1) a file case containing miscellaneous documents; (2) a "Lost Passport" pamphlet; (3) a Eureka Photo Magic compact disc; (4) an Adobe Photo Shop software; (5) TDE Hot Laminator pouches; (6)  a Rotary Trimmer; (7) a TDE Laminator; (8) a TELESTRA Sim Card (mobile # 044850) and a Voda Phone Sim Card; (9) ATM receipts; (10) various miscellaneous receipts; (11) real estate documents bearing the names, "John Thompson" and "Robert Thompson;" (12) a notebook journal; (13) an Adobe Photo Shop cassette disc; (14) Helmer spray adhesive; (15) various white chopping boards; (16) photo and laminating paper; (17) a container with adhesive, a knife and tape; (18) a Canon printer; and (19) a large bundle of travel brochures and books including one on how to fake your own death and one on assisted suicide.

B.  Procedural Background.

Pursuant to terms of the provisional arrest request and the treaty between the United States of America and the Commonwealth of Australia, COTTERMAN was extradited to face charges in Federal District Court for the Districts of Arizona and the Eastern District of California.  The indictment in the District of Arizona charges COTTERMAN with two counts of production of child pornography, transportation and shipping, receipt, and possession of child pornography, and importation and transportation of obscene material; The indictment in

California charges COTTERMAN with two counts of commission of a sex felony crime against a minor by a registered sex offender, and possession of child pornography.   Due to his prior convictions, if convicted of the charged offenses, COTTERMAN faces a life sentence. COTTERMAN made his initial appearance regarding the Arizona charges in Tucson on March 31, 2008.  His detention hearing was held on April 3, 2008, at which time he was ordered detained as a risk of non-appearance and a danger to the community.

On April 18, 2008, the defendant filed a motion to suppress evidence and a request for an evidentiary hearing, claiming that the initial border search, the seizure of the laptop without particularized suspicion, and the subsequent forensic analysis without a warrant were unreasonable.  In its response, the government argued that, under the border search exception, the initial search, seizure of the defendant's laptop, and subsequent forensic analysis were not unreasonable and required no particularized suspicion.  In addition, the government asserted that he lacked standing to challenge the search due to his abandonment of the property, and that exigent circumstances obviated the need for a search warrant.  After a hearing was held before this court on August 27, 2008, the court issued a Report and Recommendation on September 12, 2008 recommending that the district court grant the defendant's motion to suppress the laptop computer.  In reaching that conclusion, this court found that the search of the defendant's laptop became an "extended border search" because the forensic analysis occurred away from the initial point of entry into the United States, and that, once the search morphed into an "extended border search," the search required, but was not supported by, reasonable suspicion.

10

On February 23, 2009, the district court issued a written order adopting the R&R in its entirety.  On March 19, 2009, the government filed a protective notice of appeal.

The government's opening brief on appeal is currently due July 1, 2009.  However, the government has filed a request for a 45-day extension.

The defendant now requests reconsideration of the court's order detaining him pending trial.

II.      LEGAL STANDARD AND ARGUMENT

Release or detention of a defendant pending an appeal by the government is governed by the provisions of 18 U.S.C. § 3142.  18 U.S.C.§3143.  The Ninth Circuit has described the factors a court is to consider pursuant to Section 3142 in determining whether a defendant should be released on conditions or detained as follows:

> Section 3142(g) specifies the various factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community.  18 U.S.C. § 3142(g).  These factors are:
>
> > (1) the nature and seriousness of the offense charged;
> > (2) the weight of the evidence against the defendant;
> > (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1407 [(9th Cir. 1985).  Of these factors, the weight of the evidence is the least

important, and the statute neither requires nor permits a pretrial determination of guilt.  *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

Additionally, "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community if such judicial officer finds that there is probable cause to believe that the person committed an offense involving a minor victim under section . . . 2251,. . . 2252(a)(1), [or] 2252(a)(2)." U.S.C. § 3142(e).  Such a presumption applies in this case, because the defendant is charged with the referenced offenses, and faces a life sentence if convicted.

Viewing the factors set out above, there are no factors that would reasonably assure the appearance of the defendant.  The defendant remains, as he was when this court first ordered his detention, a flight risk and a danger to the community, and the only circumstances which have changed since this court's initial detention order to do not alter the analysis.

COTTERMAN, already a convicted sex offender, is charged with serious felony sex offenses against children.  If convicted, he faces a mandatory term of life imprisonment, due to his criminal history, which also involved felony violations of children.  Consideration of the offense charged includes consideration of the applicable penalties.  *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (potential maximum sentences of 35 and 70 years weighed against bail).

The evidence against him, if the government prevails on appeal, is overwhelming.   That the matter is on appeal does nothing to mitigate the fact that COTTERMAN is a demonstrated

12

danger to children and a demonstrated flight risk.  Further, as referenced above, the weight of the evidence is the least important of the factors in Section 3142(g).  *Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).   Given the huge consequences to COTTERMAN if the government prevails, and the ease with which he previously fled and planned to start a new life, there is no reasonable basis for a conclusion that he would comply with pre-trial release conditions if released.

Clearly, there is no need to speculate about whether COTTERMAN poses a flight risk. As described above, he has previously well and amply demonstrated his intention to flee by lying to the ICE agents who had his computer to make them think he was on his way to cooperate while in the process of fleeing to Australia.  Once there, he managed to obtain a phone, a computer and numerous fake passports and false identification documents.  When he was arrested, he was found not only to have ample financial resources to assist his plans to live abroad using new identities, but a book on how to fake one's own death, which suggests his family ties are nowhere near what his family might like them to be.

The defendant's history and characteristics also confirm that this court was completely correct when it ordered COTTERMAN detained.  Over and over again, the defendant has shown himself to be a dishonest man with his own agenda as his only real concern.  Despite his prior sex offense convictions, the defendant continued to violate the laws, and children, by repeatedly sexually abusing his own granddaughter and creating and collecting child pornography, which he then took with him on vacation.  He lied repeatedly to authorities during the investigation of his matter, and demonstrated true deceit with his cache of false identification and passports. Moreover, the careful manner in which he prepared numerous false identities and set himself up

with access to an array of different financial resources shows him to be a meticulous planner who believes he can outwit law enforcement.  In addition to the above, the various travel brochures and book about faking one's own death found in his storage unit belie any suggestion that his ties to his wife and son will keep him nearby.

The defendant's concern about a growth on his testicle does not support release, either. The nature of the growth is unclear, and the defendant's own motion indicates he "has not availed himself" of the medical resources at CCA.  However, there are medical resources at CCA, and the defendant will receive whatever medical treatment is necessary, should there be a need for it.

As this court recognized before, the final factor to consider -- the nature and seriousness of the danger to the community posed by the defendant – also weighs in favor of detention.  The defendant has violated multiple children before, and even after convicted of those offenses, managed to provide the government with overwhelming evidence of his continued interest in sexually exploiting children, including his own granddaughter.   The charged offenses demonstrate that the defendant continues to pose a very real risk to children.

In sum, considering the nature and seriousness of the offenses, the term of imprisonment faced upon conviction, and the defendant's demonstrated interest in foreign travel and willingness flee the jurisdiction when faced with an investigation, the defendant remains a very real risk of flight, danger, and nonappearance.  The new circumstances alleged to form the basis for reconsideration do not reduce these risks.   The government therefore respectfully requests

14

that the court deny defendant's request for reconsideration and leave its prior order detaining the

defendant unchanged.

Respectfully submitted this 24th day of June 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

*s/Carin C. Duryée*

CARIN C. DURYEE
Assistant U.S. Attorney

Copy of the foregoing served electronically
this 25th  day of June 2009, to:

Alfred S. Donau, III., Attorney for Defendant

15