IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

FILED LODGED
RECEIVED COPY

JUN 2 5 2020

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

United States of America,

    Plaintiff

    v.

Howard Wesley Cotterman,

    Defendant/Movant

Case No.CR07-01207-TUC-RCC

MOTION TO REDUCE SENTENCE
PURSUANT TO
18 U.S.C. § 3582(c)(1)(A)(i)

      This Motion submitted by Howard Wesley Cotterman, pro se, is a request for Compassionate Release based on Extraordinary and Compelling Reasons defined by U.S. Sentencing Commission U.S.S.G. § 1B1.13 "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." On May 13, 2020, I personally observed Case Manager Baumeister scan and email the Warden's Office, my six-page request for the BOP to motion this Court for Compassionate Release under 18 U.S.C. § 3582(C)(1)(A). Having not received a response in over thirty days, I'm submitting this 3582 Motion directly to the Court.

## BACKGROUND, RELEVANT FACTS, and CIRCUMSTANCES

      I have been in custody since my arrest on 9-8-2007. I served most of my first eight years at CCA in Arizona during which suppression of evidence was reversed on grounds not appealed by the prosecution; and to which Ninth Circuit Judge Milan Smith vociferously dissented. While at CCA my health was generally stable except for fainting spells during my last year and hospitalization with pneumonia. Increases in blood pressure and cholesterol were managed by prescription medicines (Appendix 1).

      My bench trial occurred 6-10,11-2014. I was sentenced to 35 years on 9-24-2014; then transferred to FCI-Lompoc in November 2014; and finally to FCI-Sheridan in March 2015. This focuses on subsequent changes.

      FCI-Sheridan had not officially confirmed any Covid-19 inmate cases through May 2020;

however, according to a Health Services internal bulletin, only three inmates had been tested. Purportedly, only eight staff members have been infected. Public reports track the virus spreading throughout the BOP, adding several infected facilities each week to the total, which now exceeds 60 affected prisons.

The restrictions on movements and groups initiated by BOP and FCI-Sheridan management are appreciated by those of us at high risk. My Unit Team staff members (Correctional Counselor, Psychologist, and Case Manager) are very professional and diligent. It is alarming, though, that the institution depends on unreliable temperature screening of arriving shifts and that no effective testing program or treatment is available. Worse yet, some officers are lax; not wearing masks nor enforcing mask or crowd policies.

Though inmates are not informed about infections or exposures outside their own locked-down housing unit, inside incidents are readily apparent. For example, an inmate in my housing unit, Wayne Morris, was quarantined in his cell on June 11 after his cellmate reported symptoms. Dozens of other inmates in this unit, who had been exposed to these two cellmates, have not been quarantined nor further restricted to protect others, at least not yet.

In the meantime, phone and email queues are typically crowds of 15 to 20 inmates. Some disdain masks, others complain of symptoms, all of which lead me to avoid the only remaining personal interactions in this prolonged absence of visiting privileges. Further avoidance for fear of virus exposure, I refused a hospital visit for a colonoscopy, apparently triggered by a smear test returned with blood (Appendix 2). Some are reluctant to go to sick call for fear of exposure to the virus or risk of being quarantined in the SHU.

These circumstances not only diminish my own self-care abilities, but also reveal risks and vulnerabilities of deteriorating health over the last few years that prompted my urgency in submitting this Motion.

### DECLINING HEALTH and AGING FACTORS summarized
#### APPLICATION NOTE 1(B): AGE

This relates my own circumstances to the qualifying factors U.S.S.G. § 1B1.13 Application Note 1, Extraordinary and Compelling Reasons. The most significant and relevant

qualifying factors in my situation are under (B) Age, namely:

(i) age 65

(ii) serious deterioration in physical or mental health because of the aging process

(iii) served at least 10 years.

Since (i) and (iii) are obviously satisfied, this section focuses on (ii). Five of my chronic and debilitating conditions, detailed in Appendix 2 and Appendix 3, are especially pertinent: Hypothyroidism, Cardiovascular, Pulmonary Embolism, Prostate Hypertrophy, and Colon disease; all but one (prostate) were emergent after sentencing; the thyroid decline is accelerating.

APPLICATION NOTE 1 (A): MEDICAL CONDITION elevated by self-care

This addresses self-care limitations should this Court be inclined to deny Compassionate Release despite satisfaction of Application Note 1(B).

Medical conditions detailed in Appendix 4, such as constricted swallowing, Parkinson's onset, and cataracts, surely qualify to the extent that they limit self-care and that recovery is not expected. As noted above, and in the Background section, the growing presence of Covid-19 significantly restricts self-care and exacerbates the risks, including the disabling outcomes, of pneumonia and chronic conditions. Appendices 3 and 2 also make note of self-care issues.

## APPLICATION NOTE 1(C): FAMILY CIRCUMSTANCES

My wife of thirty years, Maureen, is now 75 years old and has been living alone for over 13 years. Her frailty and vulnerability increases with each death of friend of family. While her difficulties may not yet rise to the level of (C)(ii) incapacitation, they come very close. With Maureen's loss of mobility, my eldest son, Greg, now 57, had been bringing her for visits on most three-day weekends - an arduous six-day trip, and a life force for us. With visits no longer permitted nor advisable with her declining health, I'm seeking this Court's compassion for her circumstances more than my own. Please consider the possibilities afforded by home confinement, as well.

## APPLICATION NOTE 4: 18 U.S.C. § 3553(a) FACTORS

With full consideration of the 3553(a) factors, my time-served surely constitutes a sentence sufficient but not greater than necessary to accomplish the goals of sentencing as

evidenced by my extensive rehabs and programs noted below, exhibited respect for the law, and in recognition of just punishment and adequate deterrence. Access to medical care and elective surgery for colon, throat, and cataracts are critical factors.

## VULNERABILITIES and MAJOR RISKS

With the spread of Covid-19, the lacking ability to test or treat, coupled with my age and decline, I may be the most vulnerable inmate remaining at this facility. Several younger and healthier inmates have been released, two out of my housing unit.

Colon disease risks and disorders reveal other vulnerabilities within the prison environment as the details in Appendix 2 establish. This situation has existed for years and still does.

The most vulnerable inmates certainly appreciate BOP efforts to forestall the virus, nonetheless, growing evidence warns us that the clock is ticking, at least in my circumstances.

> In a study of 4000 New York City Covid-19 patients, being 75+ was the main predictor of hospitalization, ICU, and death.

> A recent study in the Netherlands found "remarkably high" levels of blood-clotting among Covid-19 patients.

> A consortium of experts from 19 hospitals around the world has concluded that those with the disease are more susceptible to clots.

These studies caught my attention because of my cardio disorders, pneumonia history, and especially the embolisms necessitating a blood thinner. My most recent bout with pneumonia occurred in 2013/2014 while at CCA. After passing out cold in the dayroom, I was taken by ambulance to a hospital for diagnosis and treatment, and subsequently to the CCA infirmary for recovery; a total hospitalization of several weeks. Previous pneumonia infections had not required hospitalization.

## LOW RISK OF RECIDIVISM or TO COMMUNITY

I've been in custody since my arrest on 9-8-2007 with no loss of good-time credits; no incidents; being fully employed; and meeting all financial obligations. While serving my sentence I have continually programmed with the psychologist and correctional counselor; taken many ACE courses; completed all available professional courses; and pursued all forms of

individual and group therapy.

Turning 80 years old in November, I'm in the category least likely to recidivate according to the U.S. Sentencing Commission's "The Effects of Aging on Recidivism Among Federal Offenders" (Dec 2017). Moreover, my physical condition and mental disposition realistically preclude recidivism.

My offense was not a violent one. Having undergone a long period of incarceration, and having experienced substantial mental changes and physical deterioration, I do not pose a danger to any person or to the community.

## PROPOSED RELEASE PLANS

My plans are straightforward having had the full support of my family throughout my incarceration. I connect with my wife several times weekly by email (daily by phone before Covid-19 lockdown queues). Our plan is to resume living in the home that has been our permanent residence for the past 27 years. We are able to meet our financial needs with our combined Social Security and retirement funds, which also cover health care and insurance costs to supplement the government plans. My son, Greg, lives just 45 miles away, owns his own home, and is fully employed in a professional career. He has always been available as needed, financially and otherwise.

## CONCLUSION

My most debilitating and life-threatening diseases, such as thyroid dysfunction or pulmonary blockage, are surely sufficient in themselves to justify release, with or without the presence of Covid-19, as are several other medical and aging conditions when considered cumulatively.

Covid-19 has been found to be, itself, an extraordinary and compelling circumstance, or at least a devastating complication of catalyst to other, lesser, conditions. With the clock now ticking, Covid-19 vulnerability imposes a new urgency, even more so for my wife.

I respectively implore this Court to find merit in my Motion so that I can get help to expeditiously substantiate the community, personal and family matters, and proposed release plans.

Respectfully submitted this 15th day of June, 2020.

Howard Wesley Cotterman, Movant

*Howard Cotterman by Maureen Elizabeth Cotterman POA*

## APPENDICES: Health and Medication Details

On May 19, 2020, I submitted a written request for specific records to Health Services, which has not responded. I have noted below the provider and approximate date of event, consultation, diagnosis, or treatment where available.

APPENDIX 1: Medication History; Dr. Joyce, Pharmacist

Prior to incarceration, I had not needed any ongoing prescription medications; only short-term antibiotics to treat recurring bronchial infections and pneumonia. As my health declined in custody, the following were necessitated: Aspirin (as blood thinner); Atenolol 25mg (high blood pressure); Atorvastatin 20mg (cholesterol, triglycerides); Levothyroxine 75mg (Hypothyroidism); Chlorthelidone and Hydrochlorothiazide (foot, ankle swelling - dropped for side-effects).

APPENDIX 2: Colon diseases; CCA records; Dr. Grasely, Ms. Morgan, (2-26-2020)

My father died of colon cancer so I've had regular colonoscopies, most recently while at CCA. Diverticulosis and Diverticulitis were diagnosed. On 2-26-2020 I was called to Medical Services to prep for a hospital trip for a colonoscopy. Thinking it was routine, and not wanting to be exposed to transportation and hospital environments, I declined. Subsequently I learned that blood had been found in my September 2015 stool sample but never reported to me or acted upon. (Gives real meaning to the phrase, "self-care in the prison environment.")

APPENDIX 3: Chronic and Debilitating; Dr. Grasely, Dr. Joyce, Dr. Cantu

Debilitating - no substantial improvement promised by conventional treatment; progressive; incurable.

Hypothyroidism - decline accelerating (250% worse , July 2017 to September 2019) requiring increased Levothroxine dosage. Mayo Clinic states, "Thyroid gland produces T3 and T4 hormones which have enormous impact on health, affecting all aspects of metabolism ... and vital functions such as body temperature and heart rate."

Chronic - I was designated as Chronic Care Level 2 shortly after transfer to FCI.

Cardiovascular and pulmonary disorders are apparently interrelated, requiring Dr. Joyce to adjust meds to balance fainting spells, chest pain, and swelling. Most recent fainting spells , 5-15-2018 and 8-26-2019; palpitations and chest pain most recently reported 2-20-2020; pulmonary embolism diagnosed 9-16-2016 and related waves of chest pain occur monthly, lasting one to two hours. I've requested an increase in blood thinner as frequency has increased.

Prostate Hypertrophy - diagnosed prior to incarceration, this disorder continues to worsen as measured by more frequent, slowed urination, interrupting sleep, as well. I have unsuccessfully sought a source of supplemental zinc.

APPENDIX 4: Functional and Physical Disorders/Limiters

Parkinson's (onset of tremors) - recurring shaking periods of head and forearms with temporary inability to eat with a spork or write (for example, copying this Motion required multiple sessions over two days). While I'm still able to to function most of the time, I prefer not to medicate.

Rupture to previous hernia repair - fall at CCA limits physical activity and mobility.

Throat constriction - trouble swallowing - examined by outside clinic in 2014: 3 causes identified; swallow tests scheduled but interrupted by transfer to FCI. I manage through diet (avoiding some solid foods) and through laborious mastication.

Cognitive and memory loss - worsening from aging, disruptive environment, and side-effects from meds. (My mother, brother, sister all died of mental illness complications.)

Cataracts - diagnosed in 2006; progression noted in recent eye exam and consultation for clear lens replacement surgery.

Ocular migraines - vision impairment diagnosed 6-5-2015. Most recent episodes: 8-28-2017, 5-9-2020.