**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Wesley Cotterman, | No. CV-16-00667-TUC-RCC |
| Petitioner, | No. CR-07-1207-RCC-CRP |
| v. | **ORDER** |
| United States of America, | |
| Respondent. | |

Before the Court is Petitioner Howard Wesley Cotterman's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Doc. 49.) For the reasons stated herein, the Court denies the motion.

## I.   FACTUAL AND PROCEDURAL HISTORY

The present case is not Cotterman's first conviction for sexual misconduct with a minor. The Presentence Report ("PSR") reveals that:

> . . . as early as 1991 he was convicted in Santa Clara County of lewd and lascivious conduct with a child, child molestation, and use of a minor in sexual conduct. In this case, Cotterman went to child-care facilities under the guise of investigating child abuse. In at least one instance, he was granted access to two six-year-olds, who he asked to remove their clothes while he took photos of them. In addition, in the Eastern District of California, Cotterman was convicted in 2007 of commission of a sex felony crime involving a minor by a registered sex offender.

(CR-7-1207-RCC-CRP ("CR") Doc. 205 at 2–3 (citations omitted).) The PSR also

explains the details of the offenses at issue in Cotterman's § 2255 habeas petition:

> At 12:30 p.m. on April 6, 2007, the defendant and his wife arrived at the port of entry in Lukeville, Arizona, in a passenger car and reported they were returning to their home in California following a vacation in Mexico. Based on a TECS alert indicating the defendant was a convicted sex offender suspected of travelling abroad for purposes of child sex "tourism" agents conducted a search that resulted in the discovery of two laptop computers and several cameras in the vehicle. While allowing the defendant and his wife to continue on with their travels, agents maintained possession of their property for further examination.
>
> On April 8, an agent found 75 images of child pornography on one of the laptops along with several suspicious files that were password protected. The same day, the agent requested the defendant's assistance in accessing the files and the defendant agreed to report to the ICE office in Tucson the following day. The defendant failed to show, however, and further investigation established that on April 9 he departed from Tucson on a flight to Hermosillo, Sonora. From there, he boarded flights to Canada and Japan and was believed to have eventually traveled to Sydney, Australia, to avoid prosecution.
>
> On April 11, the agent opened approximately 23 password-protected files that were found to contain 378 images of child pornography as well as at least three videos. The vast majority of the images involved sexually explicit depictions of the defendant's granddaughter. In at least one image, the fingers of an adult male believed to be the defendant are shown spreading her vaginal opening. [The defendant also created collages of various close ups of the child's genitalia.] The investigation would establish the images were taken on multiple occasions in approximately 2004–06 when the victim was approximately 7–10 years of age. Unrelated to this victim, on the computer, the agent also found approximately 300 text stories that described acts of child pornography.

(*Id.* at 2–3 (citations omitted).) Cotterman was charged in an eight-count indictment consisting of production, transportation, receipt, and possession of

child pornography; importation and transportation of obscene material; and flight to avoid prosecution. (CR Doc. 9.)

On April 18, 2008, trial counsel filed a motion to suppress the evidence collected, challenging whether there was reasonable suspicion for the border search, original seizure, and forensic analysis of Cotterman's electronics. (CR Doc. 17.) Trial counsel sent a letter to the Government on April 23, 2008, explaining that there was a good chance Cotterman could win the motion to suppress, and indicating Cotterman would be willing to plead to transportation of obscene materials if the advisory range was between 63- and 78-months' imprisonment. (CV-16-00667-RCC ("CV") Doc. 49-20 at 2.) Trial counsel later proposed a 90-month sentence, but the Government refused on July 7, 2008. (CV Doc. 49-21 at 2.) In a May 14, 2008 letter, trial counsel explained to Cotterman that the government was unlikely to accept his proposed 63- to 78-month plea and that there was only one chance at plea negotiations because both the United States Attorney's Office ("USAO") and the Department of Justice ("DOJ") had to agree to the terms of the plea. (CV Doc 49-22 at 2.)  Soon thereafter, on June 27, 2008, the Government offered Cotterman a plea of 12- to 20-years' incarceration; an offer Cotterman avers was never relayed to him. (CV Doc. 49 at 4.)

On September 12, 2008, Magistrate Judge Charles R. Pyle issued a report and recommendation recommending the Court grant the suppression motion. (CR Doc. 58.) This Court adopted the Report and Recommendation, granting the motion on February 23, 2009. (CR Doc. 71.) The Government filed an interlocutory appeal March 19, 2009. (CR Doc. 72.)

While the motion was pending appeal, on December 22, 2009, the Government moved to dismiss count eight, flight to avoid prosecution. (CR Doc. 97.) The Ninth Circuit later reversed and remanded the Court's decision, and the mandate issued on January 13, 2014. (CR Doc. 111.) Cotterman's petition for rehearing en banc was denied March 3, 2014. (CR Doc. 116.)

On June 6, 2014, Cotterman signed a stipulation of facts, stipulating that:

(1) Cotterman had prior convictions for sexual conduct with a minor; (2) Cotterman crossed the border with his laptop and hard drive, including over 300 stories relating to sexual conduct with children and incest and 29 password protected images of Cotterman's granddaughter and other minors; (3) Cotterman fled to Australia; and (4) the images were transported in interstate commerce. (CV Doc. 49-10 at 5.)

Cotterman also signed two Waivers of Jury Trial—one on June 9, 2014 and another on June 10, 2014—indicating that "after being **fully informed of his constitutional rights to a jury trial**, defendant Cotterman waives those rights and agrees to proceed before a judge without a jury." (CR Docs. 120, 127 (emphasis added).)

Prior to the bench trial, the Court reaffirmed that Cotterman was ready to proceed. The Court stated:

> THE COURT: Good morning. Mr. Cotterman, I have in front of me a waiver of trial by jury form that you just signed this morning; is that correct?
>
> THE DEFENDANT: That's right.
>
> THE COURT: You've discussed this with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: He's answered all your questions about this?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And in fact, I think the last time we were in court he indicated that this was going to be a trial in front of the Court, not in front of a jury; correct?
>
> THE DEFENDANT: That's right.
>
> THE COURT: He gave the indication with your assurance that was what you wanted; correct?

- 4 -

THE DEFENDANT: That's correct.

THE COURT: You understand the burden of proof is the same? The only thing that's different about the trial is a jury doesn't decide it. I do. Correct?

THE DEFENDANT: That's my understanding.

THE COURT: No one's forcing you or threatening you to make you enter this waiver of jury trial?

THE DEFENDANT: That's right.

THE COURT: You're doing this of your own free will?

THE DEFENDANT: Yes.

THE COURT: All right. [Trial counsel], you have counseled Mr. Cotterman for quite some time now, and you believe he understands what he's doing?

[TRIAL COUNSEL]: I do, Your Honor.

THE COURT: All right. And you've explained the process to him?

[TRIAL COUNSEL]: I have.

THE COURT: And he understands it?

[TRIAL COUNSEL]: I believe he does.

THE COURT: All right. I'll sign the form and accept the waiver of jury trial.

(CR Doc. 160 at 4–5.)

The Court held a bench trial on June 10–11, 2014. (CR Docs. 126, 128.) After trial, Cotterman was convicted of two counts for production of child pornography in violation of 18 U.S.C. §§ 2251(a), (e), and 2256(2); one count of transportation and shipping of child pornography in violation of 18 U.S.C. §§

2252(a)(1), (b)(1), and 2256(2); one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2), and 2256(2); and one count of importation of obscene material in violation of 18 U.S.C. § 1462(a). (CR Doc. 205 at 2–3.)

Trial counsel filed a sentencing memorandum, arguing for a reduced sentence because of Cotterman's advanced age, the difficult prison circumstances during the time he already served, his financial assistance to the victim's family, and his remorse. (CR Doc. 140.) Counsel also argued the victim was not "used" to engage in sexually explicit conduct, as necessary under the statute, because she was allegedly asleep at the time the photos were taken. (*Id.*) Counsel noted that no matter the sentence, because of Cotterman's advanced age he "will most likely die in prison." (*Id.* at 2.)

At sentencing, trial counsel argued for a reduced sentence of 15 years' incarceration under the § 3553(a) sentencing factors. (CR Doc. 162 at 4–18.) The PSR stated Cotterman was subject to a life sentence but added that a 30-year sentence was appropriate. (CR Doc. 136 at 5, ¶ 20.) The PSR also explained that Cotterman was not subject to enhancement for his prior convictions. (*Id.* at 3, ¶ 11.) The Government indicated that despite the withdrawal of the allegations of priors, its recommendation was the same—the Government asked that Cotterman serve 60 years' incarceration. (CR Doc. 135 at 5–7.)

The Court sentenced Cotterman to a total of thirty-five years' incarceration for two counts of production, one count of transportation, and one count of possession of child pornography, as well as one count of importation of obscene material. (CR Doc. 151.) The Court told Cotterman that it "has every confidence that the sentence just imposed results in you spending the rest of your life in prison. The Court believes that's an appropriate sentence." (CR Doc. 162 at 25–26.) Cotterman appealed, arguing that the Court improperly considered the § 3553(a) sentencing factors and that his sentence was substantively unreasonable. (CR Doc. 165-2.) The Ninth Circuit affirmed the Court's sentence. (*Id.*)

## II.   COTTERMAN'S AMENDED § 2255 HABEAS PETITION

Cotterman's amended § 2255 raises seven claims of ineffective assistance of counsel ("IAC"). Cotterman argues counsel was ineffective because he:

(1) Did not relay a 12- to 20-year plea agreement, failed to negotiate a better plea, and erroneously believed Cotterman was subject to a sentencing enhancement;

(2) Did not inform him about his right to a jury trial, and the Court's colloquy was insufficient to inform him of his rights;

(3) Did not inform Cotterman about his right to testify;

(4) Stipulated to nearly all of the elements of his offenses;

(5) Failed to argue that (a) Cotterman's acts were not "lascivious" and (b) that his granddaughter was not "engaged" or "used" in sexually explicit conduct;

(6) Did not argue for acceptance of responsibility at sentencing; and

(7) Committed cumulative error.

(CV Doc. 49.) For each allegation, Cotterman claims his appellate counsel was ineffective for not raising the issue on appeal.

## III.   STANDARD OF REVIEW

A federal prisoner who challenges the fact or length of his detention in a § 2255 habeas petition may be granted relief under the statute when: (1) "the sentence imposed was in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such a sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence was "otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A petitioner may raise an IAC claim in a § 2255 habeas petition if the petitioner has not expressly waived this right. *See United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000). A successful IAC claim must demonstrate both that counsel's performance was deficient, and that the petitioner suffered prejudice because of counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 686–90

(1984). To be ineffective, counsel's assistance must have been objectively unreasonable. *Id.* at 688. In its analysis, "[the] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Carrera v. Ayers*, 670 F.3d 938, 943 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669. Moreover, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690) Furthermore, prejudice occurs only when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

### 1) *IAC During Plea Bargaining*

#### a. <u>Failure to Convey Plea Offer</u>

Cotterman first argues that trial counsel was ineffective because counsel did not relay a 12- to 20-year plea agreement. (CV Doc. 49 at 4.) The Court finds this contention unconvincing.

The *Strickland* two-pronged standard applies equally to ineffective representation during plea negotiations. Failing to relay a plea agreement may be deemed ineffective under *Strickland* because, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To satisfy the prejudice requirement:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would

have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Cotterman has failed to convince the Court that the 12- to 20-year plea agreement was not relayed to him. Here the Court finds trial counsel's testimony persuasive. Counsel stated: (1) it was his practice to explain plea offers, (2) he would not decline a plea offer without a client's approval, (3) he consistently conveyed and explained offers and counteroffers to and from Cotterman, and (4) he declined the 12- to 20-year plea at Cotterman's request. (Doc. 55-1 at 3, ¶¶ 6–8.) Moreover, Cotterman's own statements belie his alleged ignorance. In the evidentiary hearing, Cotterman admitted counsel relayed a proposed plea agreement for 63- to 78-months' incarceration and relayed that there was an anticipated 20-year plea, but suspiciously contends the 12- to 20-year plea was absent from discussions. (*See* CV Doc. 71 at 71, 73.) In addition, the evidence and Cotterman's testimony show he was very active in his own representation, not simply a passive participant in the process. The Court also finds Cotterman's motivation suspect. Cotterman may now wish that he had taken the plea agreement, but his assertion it was never explained to him is disingenuous. The Court credits trial counsel's version of events over Cotterman's. *See United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003).

Moreover, Cotterman has not shown prejudice because he cannot show there was a reasonable probability the outcome would have been different. Even long after his conviction, at the evidentiary hearing, Cotterman claimed that his actions were not sexually explicit. (*See* CV Doc. 71 at 110 (holding onto the assertion that the photos "were not sexually motivated").) It is therefore unlikely he would have provided a factual basis for the change of plea.

### b.  **Plea Negotiations**

Cotterman next argues that trial counsel was ineffective because (1) counsel did not zealously pursue a more favorable plea agreement throughout pretrial litigation, and (2) during plea negotiations counsel erroneously believed Cotterman was subject to a mandatory life sentence for a prior California conviction that did not qualify as a predicate offense. (CV Doc. 49 at 12–17.) Cotterman's claim fails because he cannot show prejudice.

The *Strickland* two-pronged test applies IAC claims over counsel's plea neotiations. *Lafler*, 566 U.S. at 163 (counsel advised to reject plea on faulty basis that defendant could not be convicted at trial). In this instance, prejudice requires a movant show "the outcome of the plea process would have been different with competent advice." *Id.*

Cotterman cannot demonstrate prejudice because he cannot show that it was likely he would have been offered a better plea or that the Court would have accepted the terms. This is exemplified by the fact that the Government's withdrawal of the allegations of priors had no effect on the Government's proposed sentence. In addition, even without the enhancement, the United States Sentencing Guidelines ("U.S.S.G.") calculation for Cotterman's sentence was still life in prison. (CR Doc. 136 at 3, ¶ 65.) Moreover, prior to the offer of 12- to 20-years, the Government had indicated that the plea offer was a one-shot deal, that both the USAO and the DOJ had to agree at once, and that no further negotiations would take place. Finally, there is no reason to believe the Court would have accepted a lesser plea agreement. At sentencing the Court noted that the sentence distributed was essentially life but indicated a life sentence was appropriate given the nature of his crimes.

The Court is also not convinced that counsel's failure to pursue a plea agreement while this case was on appeal was ineffective. Cotterman won the motion to suppress in this Court, and success at the circuit court would have led to dismissal of this matter. Moreover, Cotterman had no entitlement to the plea

agreement of his choice, *see Missouri*, 566 U.S. at 148, and the Court cannot conclude that had counsel acted differently, Cotterman would have been given a better offer.

   **2)** *Right to Jury Trial*

   Cotterman next alleges that trial counsel was ineffective for allowing him to proceed with a bench trial and claims that if counsel had done his job properly, Cotterman would have insisted on a jury trial. (CV Doc. 49 at 19–32.)

   A defendant may waive a jury trial if: "(1) the waiver is in writing; (2) the government consents; (3) the court accepts the waiver; and (4) the waiver is made voluntarily, knowingly, and intelligently." *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). Failure to advise a defendant about the risks and benefits of a bench trial prejudices a defendant if the defendant can show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995). A written waiver results in a presumption that the waiver is knowing and intelligent. *United States v. Shorty*, 741 F.3d 961, 965–66 (9th Cir. 2013). In addition, the Court need not provide a colloquy outlining the waiver of a jury trial where "strong indicia [show that] the waiver was voluntary, knowing and intelligent." *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1103 (9th Cir. 2005).

   Cotterman signed not one, but two waivers of jury trial. Each waiver explained that he had been informed of his constitutional right to a jury trial. Moreover, the Court confirmed with both Cotterman and trial counsel that Cotterman understood the rights he was giving up and insured that Cotterman's decision was voluntary. (CR Doc. 160 at 3–4.) The presumption that his waiver was knowing and voluntary is not undermined by his self-interested claim of ignorance.

   In addition, Cotterman is an intelligent individual and his claim that he did not knowingly enter into a bench trial is unpersuasive. Cotterman has a masters'

degree in electrical engineering from Purdue University and suffers from no ailments that would affect his ability to comprehend the nature of the waiver. During the evidentiary hearing, Cotterman admitted that at the time of trial he knew that a jury decided a defendant's guilt, but quickly backtracked and stated he "[d]idn't know anything at that point" and did not know what the term bench trial meant. (CV Doc. 71 at 90–93.) But Cotterman ignores that he had already participated in a bench trial in a previous case (CV Doc. 71 at 92), and his feigned ignorance is unconvincing. There is, therefore, strong indicia demonstrating Cotterman's waiver was knowing and intelligent, and voluntary.

Furthermore, Cotterman's ability to knowingly and intelligently waive a jury trial was not dependent upon whether his sentence was subject to enhancement. Cotterman's waiver was knowing merely because he was aware of the right he was giving up. Even if he believed he was waiving his right to a jury trial to have the priors dropped, this demonstrates that Cotterman knew what a jury trial was and what he was giving up by waiving a jury trial. (*See* CV Doc. 55 at 20.)

Also, under certain circumstances, waiving a jury trial was a sound defense strategy. *See Adams v. United States ex. Rel. McCann*, 317 U.S. 269, 278 (1942). Trial counsel avers that he recommended a bench trial because he "believed a judge would be less influenced by the emotional content of the evidence" and that "a judge would be more open to legal argument about what constituted pornography and obscene materials." (CV Doc. 55-1 at 3.) These are valid reasons for avoiding a jury trial, and so trial counsel's reasoning cannot be deemed ineffective.

Nor has Cotterman shown prejudice; he cannot show that if he had proceeded to a jury trial the outcome would have been different. Thus, the Court finds Cotterman's claim that trial counsel was ineffective for proceeding with a bench trial fails.

///

### 3) *Right to Testify*

Cotterman also claims that trial counsel was ineffective because he did not inform Cotterman of his right to testify nor did the Court notify Cotterman of this right. (CV Doc. 49 at 33–28.)

"To the extent [a petitioner] maintains that . . . his waiver [of the right to testify] was not knowing and voluntary and that he would have testified given the chance, these are issues of fact, which may be raised in a section 2255 proceeding." *United States v. Johnson*, 820 F.2d 1065, 1074 (9th Cir. 1987). However, a defendant must "alert the trial court that he desires to testify or that there is a disagreement with counsel regarding whether he should take the stand." *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000), *cert. denied*, 532 U.S. 980, (2001). If a defendant fails to do so, waiver is presumed. *Id.* Moreover, "[t]he district court has no duty to advise a defendant of his right to testify." *United States v. Yee Soon Shin*, 953 F.2d 559, 561 (9th Cir. 1992).

Despite his contention that he asked counsel to allow him to testify on multiple occasions, Cotterman did not alert the Court of his wish to testify, nor did he alert the Court that he and trial counsel were in disagreement. His barren allegation post-conviction that he did not know he could testify is not sufficient reason to grant relief. In addition, Cotterman acknowledges that not testifying at his previous bench trial was a mistake. (CV Doc. 49-5 at 7, ¶ 7.) His awareness of the error from his prior criminal case undermines his assertion of ignorance here. Furthermore, a sworn statement from trial counsel avers that had Cotterman informed counsel he wanted to testify, counsel would have let him. (CV 49, Ex. E ¶ 6.) The Court credits counsel's testimony over Cotterman's self-interested, unsupported statement. *See Elliott*, 322 F.3d at 715. Finally, the Court was not responsible for informing Cotterman of his right to testify.

Regardless, Cotterman cannot show prejudice. His affidavit states if permitted, he would have testified that (1) he did not groom his granddaughter but provided her financial assistance; (2) his prior conviction involved only two

photographs, and these were not sexual but clinical in nature; (3) he saw three mental health experts who found he was not a pedophile; (4) he did not remove his granddaughter's underwear when photographing her genitalia; (5) he could explain the source of the child pornography files found on his computer; and (6) he emailed a porn site to request being removed from their mailing list. (CV Doc. 49-5 at 6–7, ¶ 6.) Cotterman's proposed testimony does not help him, nor does it undermine the conviction. In fact, it exemplifies how Cotterman has minimized the harm he has caused to others and failed to take responsibility for his actions.

The Court cannot find that Cotterman's allegations are credible, nor that trial counsel's representation was ineffective. But, even if the Court did find in Cotterman's favor, his claim is procedurally defaulted without excuse.

### 4) *Stipulated Elements*

Cotterman next claims that counsel was ineffective because he allowed Cotterman to stipulate away his case. (Doc. 49 at 39.) Cotterman argues counsel pressured him into a bench trial to save time, but a bench trial was not to Cotterman's advantage. (*Id.*) Cotterman's claim fails because his agreement was voluntary, he cannot show counsel's actions were ineffective, and he suffered no prejudice.

Stipulations are valid unless they are involuntary. *United States v. Molina*, 596 F.3d 1166, 1168–69 (9th Cir. 2010). Cotterman makes no showing that the stipulated facts could not be proven at trial. For instance, Cotterman claims counsel should have challenged the loss of the hard drive, but fails to convince the Court that the mirror image of the hard drive could not be connected to the original in Cotterman's possession. Moreover, Cotterman actively participated in the creation of the stipulation—the stipulation bears Cotterman's signature and his initials next to areas he wanted changed. (*See* CR Doc. 117 at 6.) This not only saved time but avoided the family's exposure to the unnecessary recitation of embarrassing and explicit witness testimony during trial. And so, the Court finds Cotterman has not met the requirements of either prong of the *Strickland* analysis.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5) *Lascivious Acts and Engagement in Sexually Explicit Conduct*

Cotterman next alleges that trial counsel was ineffective because he did not file a pretrial motion challenging whether the images found on Cotterman's devices were sexually explicit. (Doc. 49 at 42–49.)

A defendant engages in sexually explicit conduct when there is "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2). To determine if conduct is lascivious, the Court considers whether (1) the minor's genitals or pubic area are the focus, (2) the area photographed is linked to sexual activity; (3) the minor is inappropriately clothed or in an "unnatural pose"; (4) there is a degree of undress; (5) the images suggest sexual prowess; and (6) the image was intended to sexually arouse the creator. *United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009).

First, it is undisputed that Cotterman's granddaughter's genitals were the focus of his photos. In fact, Cotterman even made a collage of these photos displaying multiple images of the vaginal area. Second, certain photos were taken in the bedroom, which can be linked to sexual activity. Next, as to the third and fourth considerations, Cotterman took pictures of his granddaughter's genitals partially undressed in her pajamas when he believed she was sleeping, thus her dress was inappropriate and unnatural. Consideration five is the only one that weighs in Cotterman's favor; since the child appeared to be sleeping in the photos there was no display of sexual prowess. Sixth, the mere number of images of child pornography and stories of incest found on Cotterman's devices suggest he took these photos for his own sexual gratification and undermine his assertion that they were simply "clinical."

Cotterman claims that the images must be more than voyeurism to be considered sexually explicit. (Doc. 49 at 45.) In the cases he cites in support, the photos involved surreptitious recording or mere photographing, not the removing of underwear, posing, and manual manipulation that Cotterman engaged in while taking photos of his granddaughter. The failure to raise a meritless legal argument

does not constitute ineffective assistance of counsel. *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982); *see also Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (failure to raise meritless issue on direct appeal is not ineffective). Cotterman's acts were lascivious, and so counsel's failure to argue otherwise did not constitute ineffectiveness.

Alternatively, Cotterman claims counsel should have argued that Cotterman did not engage his victim in production of child pornography because the victim was asleep when he took the photos. (Doc. 49 at 46–49.) Because there was no current Ninth Circuit case law stating that engagement includes sleeping victims, Cotterman asserts trial counsel's failure to raise this issue constituted IAC. (*Id.* at 48.) Cotterman's claim fails.

18 U.S.C. § 2251(a) provides that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished . . . ." The victim's participation is determinative of whether a defendant used the victim for the purpose of creating a sexually explicit image, but it is enough for the victim to be "used" as the subject of child pornography, irrespective of their knowledge of the purpose of the images. *See United States v. Laursen*, 847 F.3d 1026, 1032–33 (9th Cir. 2017) (joining with sister circuits in the broad interpretation of "use"); *see also United States v. Nichols*, 527 F. App'x 344 (6th Cir. 2013), *cert. denied*, 571 U.S. 937 (2013) (finding images may be sexually explicit where the victim is asleep); *United States v. Wolf*, 890 F.2d 241 (10th Cir. 1989) ("[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles . . . .") (quoting *Weigand* 812 F.2d 1239, 1245 (9th Cir. 1987)

Child pornography is a federal crime under the Protection of Children Against Sexual Exploitation Act of 1977, as amended by the Child Protection Act

of 1984. *See* Child Protection Act of 1984, PL 98–292, 98 Stat. 204.  The Child Protection Act acknowledged that "the *use of children as subjects* of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society." *Id.* (emphasis added). This harm may occur regardless of the child's state of mind and the injury may occur long after the creation of the image—to find otherwise would run counter to the protections intended in the Act.

So, Cotterman cannot show prejudice because even if trial counsel had asserted Cotterman had not "used" the victim for or "engaged" the victim in the creation of sexually explicit material, it is unlikely this argument would have been successful or led to a different result. The Court cannot, therefore, find counsel's failure to act constituted IAC.

### 6) *Acceptance of Responsibility*

The Court need only address Cotterman's claim about trial counsel's failure to argue for a reduction in sentence for acceptance of responsibility briefly. (*See* Doc. 49 at 49–55.) Cotterman was not entitled to the reduction because he has not accepted responsibility, nor did his actions preserve governmental resources. Therefore, he cannot show counsel's failure to argue for acceptance prejudiced him.

A defendant may receive an offense level reduction if he demonstrates that he has accepted responsibility for his actions. "U.S.S.G." § 3E1.1(a). Where a defendant faces an offense level of 16 or more—as in Cotterman's case—a reduction for acceptance can occur upon motion by the Government if the defendant has assisted in his investigation and prosecution and entered into an early guilty plea, thereby saving both the Government and the Court's resources. *See id.* at § 3E1.1(b). When a defendant exercises his right to trial to "challenge the applicability of a statute to his conduct . . . a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.* at n.2.

- 17 -

Cotterman proceeded to trial challenging the applicability of the statute's definition of "sexually explicit" and "use" to his conduct, however, his pretrial actions were the opposite of acceptance of responsibility. Cotterman indicated he was willing to assist authorities when stopped at the border but did not do so and did not admit to possession of child pornography. Instead, Cotterman acquired false documentation, fled the country, and had to be brought back to this district from Australia. Furthermore, his remorse at sentencing was disingenuous, he focused on others' actions rather than his own, and even now asserts that the photos were clinical rather than sexual in nature. Therefore, even if counsel had argued for acceptance, he would not have been given a reduction. The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel. *Baumann*, 692 F.2d at 572; *Jones*, 231 F.3d at 1239, n.8.

**7) Cumulative Error**

Cotterman names numerous actions that trial counsel should have taken which he believes resulted in IAC. (Doc. 49 at 55–66.) These instances of ineffectiveness include the actions mentioned above as well as the following:

- During Pretrial Litigation:
  - Failing to develop the record as to whether there was reasonable suspicion for the border search;
  - Failing to file pretrial motions to preclude prior bad acts, the flight to Australia, or the discovery of false documents in Cotterman's possession; and
  - Failing to file a trial brief challenging or objecting to the untimely introduction of other act evidence.

- At Trial:
  - Failing to challenge the Government's characterization of Cotterman as "grooming" and praying upon his victim;
  - Failing to locate and present evidence that the victim's mental health was unstable prior to the photos and her testimony was flawed;

- o Failing to challenge the admission of Agent Owen's testimony about Cotterman's flight to Mexico and his possession of false documents; and
- o Failing to present evidence that Cotterman "tried to prevent pornographic material from downloading to his computer."
- At Sentencing:
  - o Failing to file a longer sentencing memorandum or challenge the PSR's allegation that Cotterman penetrated a victim with his finger in 1992, which led to the Court running Count 6 consecutive to the other counts;
  - o Failing to argue for a variance, adjustment, or departure;
  - o Failing to request a psychiatric evaluation or introduce earlier psychological reports at sentencing;
  - o Failing to argue for substantial assistance;
  - o Failing to prevent Cotterman from filing his letter of support and failing to file other letters of support; and
  - o Failing to make a proportionality argument.

(*Id.*)

A petitioner raising a cumulative error argument asserts that although counsel's individual errors, standing alone, may not create a constitutional violation, the cumulative effect of all errors resulted in a due process violation. *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000).

Cotterman's claims do not result in cumulative error. The Ninth Circuit found there was reasonable suspicion, and Cotterman does not explain how any further record would have negated this conclusion. *See United States v. Cotterman*, 709 F.3d 952, 968–969 (9th Cir. 2013). Moreover, pretrial motions were pointless given the impending bench trial and the stipulations. Even if counsel had performed opening statements, closing arguments, cross-examination, and investigation into the victim's history as Cotterman would have liked, Cotterman has not shown the arguments would have been successful, nor that they would have changed the result. At sentencing, Cotterman has not shown the PSR contained false statements. Nevertheless, Cotterman had an opportunity to

challenge factual errors. (CV Doc. 49-30 at 2–3.) Moreover, counsel did file a sentencing memorandum, making strong arguments for a shorter sentence. (*See* CR Doc. 140.) In addition, the choice to not order a psychosexual evaluation was made by the Court after discussion, and was done to prevent any injury for Cotterman's appeal. (CR Doc. 161 at 32). Finally, the proportionality argument would have been futile; the sentence was reasonable given the disturbing facts in this case. *See United States v. Cotterman*, 619 F. App'x 654 (9th Cir. 2015).

**8) Conclusion**

In conclusion, the Court does not find that the actions of trial counsel were ineffective and, as a result, the failure of appellate counsel to raise these arguments did not constituted IAC. The Court denies the habeas. Furthermore, the Court finds that jurists of reason would not debate whether the district court was correct in its procedural rulings. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, the Court will not issue a COA.

IT IS ORDERED:

1. Howard Wesley Cotterman's Amended Motion to Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 49 in CV-16-00667-RCC) is DENIED.

2. Howard Wesley Cotterman's original Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 166 in CR-07-01207-RCC-CRP; Doc. 1 in CV-16-00667-RCC) is DENIED AS MOOT.

Dated this 16th day of February, 2022.

Honorable Raner C. Collins
Senior United States District Judge